[No. 9731½.  Department One.  January 2, 1912.]

EDWARD J. DELBRIDGE *et al., Appellants,* v. ALDA I. BEACH *et al., Respondents.*[1]

ATTORNEY AND CLIENT—COMPENSATION — CONTRACTS — VALIDITY— PUBLIC POLICY—PROMOTION OF DIVORCE SUIT.  A contract for the employment of an attorney is void as against public policy and sound morals, where the attorney was to secure evidence to coerce from a husband the largest possible share of his separate property for the benefit of the wife, and if necessary to begin an action for a divorce for that purpose, when in fact the wife had no grounds for a divorce; and the invalidity of the contract is not affected by the provisions of Rem. & Bal. Code, § 474, which leaves the compensation of attorneys to the agreement of the parties, or by the fact that parties to a divorce suit may agree upon a division of their property.

Appeal from a judgment of the superior court for King county, Gay, J., entered December 24, 1910, in favor of the defendants, in an action on contract, upon sustaining a demurrer to the complaint.  Affirmed.

*William R. Bell,* for appellants.

*Aust & Terhune,* for respondents.

GOSE, J.—This is a suit to recover for services performed upon an oral contract.  Demurrers were sustained to the complaint, and a judgment entered in favor of the defendants. The plaintiffs have appealed.

One of the appellants is an attorney at law.  The contract relied upon for a recovery is set forth in paragraph 2 of the complaint, as follows:

"That about the 28th day of April, 1909, the defendant Alda I. Beach, entered into a formal oral agreement with the plaintiffs, whereby she employed them to investigate and if possible ascertain whether a certain will, executed by one Elizur Beach, shortly after his marriage with the said defendant, by the terms of which she was devised and bequeathed outright a one-third interest of all the property, real and

personal, wherever situate, of which the said Elizur Beach·
should die seized or possessed, had been destroyed or nullified'
by codicil or codicils, or by the execution of a new will; and
if any new will had been made or the old will modified, and
to ascertain the tenor and contents of such codicil or codicils
or such later will; and further, to ascertain the condition of
the title to the various tracts of land standing in the name
of the said Elizur Beach in the state of Washington and
other states at and prior to the time of the marriage of the·
defendant Alda I. Beach to said Elizur Beach; and further,
to ascertain what property had been acquired or disposed
of by him since the date of their marriage, and particularly
to take all steps and proceedings necessary in the judgment
of the plaintiffs to ascertain the intention of the said Beach
toward the defendant Alda I. Beach in the matter of the final
disposition of his property after his death, and to institute
such suits or proceedings as in the judgment of the plaintiffs
would secure to her the largest possible share in said estate,
and to prevent any disposition of any part thereof adverse
to her interest, and if the desired results could not be ob-
tained by any other means, to institute a suit for a legal sep-
aration, and as an incident thereto to precipitate a settle-
ment and division of the property rights of the defendant
Alda I. Beach and her said husband.    That in consideration
of such services the defendant Alda I. Beach agreed to and
with the plaintiffs to pay all expenses connected with said
investigation and with any suits or proceedings which should
be instituted, and as compensation to pay to the plaintiffs
one-fifth of all money, and to convey to them by a good and
sufficient deed an undivided one-fifth of all property turned
over to her by the said Beach, whether the money and prop-
erty so secured should be by voluntary settlement agreement
or compromise, devise or bequest, or as the result of a judg-
ment or decree of court."

It is further alleged that, in pursuance of the contract,
the respondent Beach paid to the appellant Snyder a re-
tainer of $100, and avanced to him for his co-appellant the
sum of $475 as expense money; that the appellants entered
upon and continued in the performance of the contract until
about the 25th day of August, 1909, when the respondent

Beach repudiated the contract and prevented further performance; that, by utilizing the evidence collected by the appellants and their counsel and advice, she has accomplished a settlement and division of the property rights of herself and husband, and has received $58,666 in money, and real property of large value, a description of which is set forth in the complaint. It is further alleged that, for the purpose of defrauding the appellants, the respondent Beach conveyed the real estate to her co-respondent, and that it accepted the conveyance with knowledge of all the facts and for the purpose of aiding her in the perpetration of a fraud upon the appellants.

Respondents contend, (1) that the contract being oral and having as one of its objects the conveyance of real property, it is within the statute of frauds and void in its entirety, and (2) that it is void as against public policy, in that it is "an agreement to procure evidence for a contemplated divorce action, and an attempt to facilitate the bringing of an action for divorce, not for the purpose of the divorce itself but to force a settlement of property rights between the defendant Beach and her husband."

We think the second contention must be upheld. It is patent that the employment contemplated coercing the husband into a division of his separate property so as to secure to the wife "the largest possible share" therein. The charge is that, if this could be accomplished in no other way, a divorce suit was to be instituted, having for its object a division of the husband's property. There is no averment in the complaint disclosing that the wife had any interest in the property. Under certain conditions, the wife may claim a homestead in the separate property of the husband. These conditions are not shown to exist. Under other conditions, the wife could claim support out of the same character of property. These conditions are not alleged. Nor is it alleged that the wife had any ground for divorce. As was said in *Hillman v. Hillman*, 42 Wash. 595, 85 Pac. 61, 114

Am. St. 135, it is the policy of the law to discourage actions for divorce. It is equally the policy of the law to permit one owning property to dispose of it as he chooses, so long as the manner of disposal violates no rule of law or public policy. The law will not permit its processes to be used in a divorce suit or otherwise to coerce a husband into an unwilling division of his separate property with his wife, except where she discloses some legal ground for divorce; and none is shown here.

If authority is needed in support of these views it may be found in the following cases: *Succession of Elliot*, 28 La. Ann. 183; *Speck v. Dausman*, 7 Mo. App. 165; *Barngrover v. Pettigrew*, 128 Iowa 533, 104 N. W. 904, 111 Am. St. 206, 2 L. R. A. (N. S.) 260; 9 Cyc. 519.

In the *Succession of Elliot*, it is said:

"The item of five hundred dollars charged by said attorneys for entering 'upon the business of securing evidence' for a contemplated suit for separation between Elliot and his wife, which was never brought, we do not regard as legitimate; an attorney ought not to recover on such a demand."

In the *Speck* case it is said:

"Courts will never lend themselves to the enforcement of a contract intended to promote the dissolution of marriage. The wife could not contract for alimony whilst the marriage existed; and such pretended agreements, if they are to have any force, must be subjected to the examination of the divorce court, and derive their sanction from a decree made by the court with a knowledge of the facts. If fair and equitable, the arrangement between the parties will receive the sanction of the court. If concealed from the court, their tendency is to produce collusion."

In the *Barngrover* case the plaintiffs, one a lawyer and the other a detective, learning that the defendant's wife was about to commence an action for divorce from the defendant, informed the defendant of that fact, and before the commencement of the divorce suit entered into a written contract

with the defendant, whereby they agreed "to prepare evidence" and try the cause prosecuted against him by his wife, and "to furnish proof" in the trial of the case of the wife's infidelity and to secure a divorce on his cross-petition to be filed in the suit for a stipulated compensation, to be paid when the divorce was procured on the cross-petition or upon the compromise of the suit by the defendant. The complaint, after setting forth the matters stated, alleged that the divorce suit had been compromised, and that the wife had been permitted to secure a divorce without opposition. A recovery was prayed, both upon the contract and upon a *quantum meruit.* The court denied relief upon both grounds, saying:

"The clearly expressed object of the agreement was to bring about a dissolution of the marriage contract and to put an end to the various duties and obligations resulting from it. It is therefore against sound public policy and void. The marriage relation is sacred, and one which the law will encourage and maintain when formed. Its dissolution will not be left to the caprice of the parties themselves, nor will it be permitted to rest on the interference of strangers. Hence any agreement conditioned on the obtainment of divorce, or calculated to facilitate its obtainment, is void. Such is the settled policy of the law as expressed in the universal rule adopted by the courts."

It is a well-settled principle of law that agreements against public policy and sound morals will not be enforced by the courts. *Wilde v. Wilde*, 37 Neb. 891, 56 N. W. 724; *Brown v. First Nat. Bank*, 137 Ind. 655, 37 N. E. 158, 24 L. R. A. 206; *Stokes v. Anderson*, 118 Ind. 533, 21 N. E. 331, 4 L. R. A. 313; *Reed v. Johnson*, 27 Wash. 42, 67 Pac. 381, 57 L. R. A. 404; *Cascade Public Service Corporation v. Railsback*, 59 Wash. 376, 109 Pac. 1062.

In the *Brown* case it is said:

"It follows, to state the rule comprehensively, that all agreements relating to proceedings in the courts, civil or criminal, which may involve anything inconsistent with the

full and impartial course of justice therein, are void, though not open to the charge of actual corruption. 3 Am. & Eng. Enc. Law 879-881; Bish. Cont. § 549. And this is true regardless of the good faith or intent of the parties at the time the contract was entered into, or the fact that no evil resulted by or through the contract."

The appellants rely upon the provisions of Rem. & Bal. Code, § 474; *Smits v. Hogan,* 35 Wash. 290, 77 Pac. 390; *Hillman v. Hillman,* 42 Wash. 595, 85 Pac. 61, 114 Am. St. 135, and *State ex rel. Arthur v. Superior Court,* 58 Wash. 97, 107 Pac. 876. The code provision is as follows:

"The measure and mode of compensation of attorneys and counselors shall be left to the agreement, express or implied, of the parties," etc.

In the *Arthur* case it is said that this provision applies to actions for divorce as well as to other actions. Neither the provision of the code nor the cases cited apply to the facts at bar. It cannot be doubted that a party having meritorious ground for divorce may agree with an attorney upon the measure and mode of compensation for his services in a divorce action. Nor can it be doubted that, under like conditions, the husband and wife may agree upon a fair and reasonable division of their property, where there is no arrangement for a collusive decree. *Long v. Long,* 38 Wash. 218, 80 Pac. 432. But these principles do not aid the appellants. The case must be controlled by the legal effect of the services contracted for, and not by the good faith of the appellants in entering into the contract. We express no opinion as to whether the contract contravenes the statute of frauds.

The demurrers were rightfully sustained, and the judgment is affirmed.

DUNBAR, C. J., MOUNT, PARKER, and FULLERTON, JJ., concur.