[No. 14454. Department One. September 10, 1918.]

M. H. EGGLESTON, *Appellant*, v. ALEX. PANTAGES *et al.*, *Respondents*.[1]

CONTRACTS — ILLEGALITY — PUBLIC POLICY — INTERFERENCE WITH JUSTICE. A contract for the dismissal of a stockholder's action for the appointment of a receiver is void as against public policy, where it provided that, in consideration of a certain sum to be paid plaintiff, the action was to be dismissed, the papers not filed, and no information of it given to any person, the president having a prospective purchaser for the corporation, and other creditors benefited by the suit being deprived of their remedy to the advantage of the plaintiff.

Appeal from a judgment of the superior court for King county, Jurey, J., entered May 25, 1917, upon sustaining a demurrer to the complaint, dismissing an action on contract. Affirmed.

*S. Edelstein* and *A. C. Shaw*, for appellant.

*Ryan & Desmond*, for respondents.

[1]Reported in 175 Pac. 34.

MAIN, C. J.—The purpose of this action was to recover the sum of $2,189, alleged to be due upon a written contract. To the first amended complaint, which will be referred to as the complaint, the defendants interposed a demurrer, which was sustained by the trial court. The plaintiff refused to plead further and elected to stand upon the complaint. Judgment was entered dismissing the action. The plaintiff appeals.

The facts stated in the complaint, necessary to the presentation of the question involved, may be summarized as follows:

During the month of May, 1907, the respondents, Alex. Pantages and wife, together with others, organized the Pantages Amusement Company, a corporation capitalized at $75,000, divided into 750 shares of the par value of $100 per share. Thereafter, and prior to December 11, 1911, the appellant and others became stockholders in the corporation. Alex. Pantages, who was the majority stockholder in the corporation, was engaged in the business of operating and conducting a circuit of vaudeville theaters in many of the cities of the United States and in British Columbia. After the Pantages Amusement Company was organized, it acquired a theater in Spokane which was operated as a part of the Pantages circuit. For a time the amusement company was operated at a profit, Pantages being the president thereof. On December 11, 1911, the appellant here, as a stockholder of the amusement company, commenced an action by the service of summons and complaint against it in which it was alleged that the amusement company had been mismanaged and was in imminent danger of becoming insolvent. The debts of the company at this time were approximately $15,000. That action was for the purpose of having a receiver appointed for the corporation to take charge of and wind up its affairs. On December 13, 1911, and

before the summons and complaint which had previously been served upon the amusement company were filed with the clerk of the superior court, the appellant and Pantages entered into a written contract, which is the basis of this action. This contract recites, that the party of the first part (appellant Eggleston) had instituted an action in which a receiver was sought; that the second party (Alex. Pantages) was interested as a stockholder in the corporation and had the management of a corporation known as the Pantages Circuit of Vaudeville Theaters, in connection with which the theater of the amusement company was operated; that it was desirable and beneficial to the parties to the contract that the action be dismissed. The contract then provided:

"Now, therefore, for and in consideration of the covenants and conditions herein and the further consideration that said action will be dismissed and the complaint herein will not be filed with the clerk of the court in which said action has been instituted, and no information will be given in reference to the commencement of said action to any person.

"It is hereby stipulated and agreed: That, on or before six months from date hereof, party of the second part will pay to party of the first part, the sum of twenty-one hundred and eight-nine ($2,189) dollars. It is further stipulated and agreed that, in the event of the reorganization or sale of the circuit of theaters operated by the said Pantages Circuit of Vaudeville Theaters prior to the expiration of said six months, that then and in that event the aforesaid sum shall be immediately paid by the party of the second part to the party of the first part.

"In witness whereof, the parties hereto have hereunto set their hands and seals this 13th day of December, 1911.

　　　　　"M. H. Eggleston, party of the first part.

　　　　　"Alex. Pantages, party of the second part.

"It is further stipulated and agreed that in the event E. Clarke Walker, C. H. Rodenbach or Mrs. Thomas G.

Thompson or their assigns, who are owners of certain shares of stock of the Pantages Amusement Company, should, prior to the termination of this agreement, commence an action for the appointment of a receiver of the Pantages Amusement Company or for the adjudicating it a bankrupt, then party of the second part shall be relieved from the obligations under this contract and said contract shall be null and void.

"M. H. Eggleston,
"Alex. Pantages."

It will be observed that, under this contract, the action was to be dismissed and the complaint and summons were not to be filed with the clerk of the court in which the action had been instituted, and that no information would be given in reference to the commencement of the action "to any person," in consideration for which Pantages agreed to pay Eggleston the sum of $2,189 on or before six months from the date thereof. The contract provided further that, if any of the other stockholders, or their assigns, of the amusement company should, prior to the termination of the agreement, begin an action for the appointment of a receiver or other adjudication in bankruptcy, then the party of the second part (Pantages) should be relieved from the obligations of the contract.

It is further alleged in the complaint that, in conformity with the contract, the action for the appointment of a receiver was dismissed without the summons or complaint having been filed, and that Eggleston "gave no information in reference to the commencement of said action to any person."

It is also alleged that none of the other stockholders instituted an action for the appointment of a receiver within the time specified in the contract, and that they (the other stockholders) knew of the financial condition of the company at the time the action for appointment

of receiver was instituted, but declined to bring the action.

Whether this action can be maintained depends upon the question as to whether the contract above referred to was against public policy. It is well settled that agreements against public policy and sound morals will not be enforced by the courts. It is a general rule that all agreements relating to proceedings in courts which may involve anything inconsistent with full and impartial course of justice therein are void though not open to the actual charge of corruption. This is true regardless of the good faith or intent of the parties at the time the contract was entered into, or the fact that no evil resulted by or through the contract. *Delbridge v. Beach,* 66 Wash. 416, 119 Pac. 856; 6 R. C. L., p. 751.

The facts pleaded in the present case show that appellant here had instituted an action for the appointment of a receiver, had invoked the process of the court, had duly served the summons and copy of the complaint. After this was done, the agreement was entered into which provided for the dismissal of the action and the withholding of the summons and complaint from filing. The legal effect of the action for appointment of receiver was to invoke the aid of the court, not only to protect the rights of the plaintiff, but to protect the rights of all other parties, including the creditors of the corporation, who had a right to come into the receivership proceeding. Where a party seeks to use the remedy given him by law for his own benefit, as well as that of others, he is required to proceed with the utmost fairness and with due regard to the rights of all parties concerned. He will not be permitted to use the process of the court to compel a debtor to secure his claim or suffer disastrous consequences of being thrown into bankruptcy, and contract, when his own claim has been secured, to dismiss the

· proceedings to the detriment of other creditors whose
rights would be protected in the receivership proceedings.

In *Paton v. Stewart,* 78 Ill. 481, the action was upon
a promissory note, the payment of which by the principals thereon had been guaranteed by the defendant.
The principals upon the note were indebted to the plaintiff and others in large sums of money, and on petition
of the plaintiffs a rule was issued out of the United
States district court that they should show cause why
they should not be adjudicated bankrupts. While this
rule was in force and before any answer had been made
thereto, and without the concurrence or consent of any
of the other creditors, it was agreed between the plaintiffs and principals on the note that the plaintiffs would
not further prosecute the rule in bankruptcy, but
would abandon that proceeding, and, in consideration
of the plaintiffs' agreement in that behalf, the note
was executed by the principals and the defendant guaranteed its payment. It was there held that there could
be no recovery on the note because it was a contract
inhibited by sound public policy. The court used this
language:

"A creditor who seeks to use the remedy given by
the law, for his own benefit as well as other creditors,·
should be required to proceed with the utmost fairness, and with a due regard to the rights of all parties
concerned, including the debtor himself. He ought not
to be permitted to use this extraordinary power to
compel the debtor to secure his claim or suffer the
disastrous consequences of being thrown into bankruptcy, and contract, when his own claim has been secured, to dismiss the proceedings, to the detriment of
other creditors. This is what is called an abuse of the
process of the law, and all contracts thus obtained are
illegal and void, as being inhibited by a sound public
policy, even between the debtor and the composition
creditor, as well as to other creditors."        ›

From the facts stated in the complaint and in the contract, it is reasonably inferable that Pantages, at the time the receivership action was instituted, had a prospective purchaser for his circuit of vaudeville theaters, and at least one reason why he did not want the complaint and summons filed and provided in the contract that no information in reference to the commencement of the action should be given "to any person," was the effect that knowledge of the action might have upon a prospective purchaser. The appellant bound himself by the terms of the contract to give no information in reference to the commencement of the action to any person, thereby sealing his lips against the disclosure of the true facts to any one rightly seeking information as to the condition of the company.

In *Douglas State Bank v. Lewinsohn,* 192 Ill. App. 364, the plaintiff brought an action on a promissory note. The defendant pleaded a set-off in the sum of $2,000. This $2,000 was alleged to be due from the plaintiff to the defendant because the plaintiff had promised to pay the defendant that sum for temporarily depositing the sum of $15,000 or more with the plaintiff bank so as to show a substantial increase in its business in order to effect a sale to, or consolidation with, another bank. It was held that,

"The contract, if there was such a contract, between the plaintiff and defendant was an immoral one for the deception and defrauding of a third person, and no right to the compensation accrued to the defendant under it which courts will enforce."

We think the contract upon which the action in the case now before us was based is against public policy and sound morals, and was, therefore, void and unenforceable. It may be true that the objection that the contract is illegal and void as against public policy comes with poor grace from one who was a party

thereto. Such objection, however, will not be allowed to prevail even when put forward by one who participated in the wrong, not as a protection to him, but for the sake of the public good and because the law will not lend its aid to enforce an illegal contract. In such cases, the law leaves the parties where they place themselves. *Dieckmann v. Robyn,* 162 Mo. App. 67, 141 S. W. 717.

The judgment will be affirmed.

FULLERTON and PARKER, JJ., concur.