[Civ. No. 4893. First Appellate District, Division One.—March 4, 1925.]

MARYLAND CASUALTY COMPANY, Appellant, v. FIDELITY & CASUALTY COMPANY OF NEW YORK, Respondent.

[1] CONTRACTS—PUBLIC POLICY—DUTY TO PROTECT SOCIETY—FUNCTION OF COURT.—Courts are not called upon to settle any question of conscience between the parties to a contract claimed to be against public policy and good morals, but are interested only in the higher duty of protecting society from the effect of contracts made in disregard of its interests; and while the defense that a contract is against public policy and good morals and, therefore, unenforceable, ill lies in the mouth of a defendant to assert, nevertheless, if public policy requires it, the plea will be permitted even if it allows one to retain an advantage without rendering the stipulated return.

[2] ID.—ESTOPPEL—WAIVER OF DEFENSE.—A contract void as against public policy cannot be treated as valid by invoking the principle of estoppel, nor can a party thereto waive his right to set up the defense of illegality in an action thereon brought by the other party; and in a suit brought upon such a contract, relief will be denied and the parties left where they are found.

[3] ID. — DEFINITION OF PUBLIC POLICY — FORBIDDEN AGREEMENTS — POWER OF COURTS TO INVALIDATE.—Public policy often changes as the law changes, and there can be no single or fixed standard governing it; and, while it is primarily the prerogative of the legislature to declare what contracts and acts shall be unlawful, courts, following the spirit and genius of the law, written and unwritten, of a state, may declare void as against public policy

---

3. See 6 R. C. L. 708.

contracts which, though not in terms forbidden by legislation, are clearly injurious to the interests of society.

[4] ID.—POWER TO INVALIDATE — REASONABLE CONSTRUCTION. — The power to invalidate agreements on the ground of public policy is so far-reaching and so easily abused that it should be called into action only in cases where the dangerous tendency clearly and unequivocally appears from the contract itself; and courts will refuse to declare a contract void as against public policy if by any reasonable construction it may be upheld.

[5] ID.—NEGLIGENCE OF HOSPITAL—WITHHOLDING KNOWLEDGE FROM PATIENT—ADDITIONAL EXPENSE ON INSURANCE CARRIER—AGREEMENT TO REIMBURSE—PUBLIC POLICY.—Where, through the carelessness and negligence of a hospital attendant, the recovery of a patient who had suffered injury in the course of his employment is delayed, an agreement between the insurance carrier for his employer and the indemnity company which insured the hospital against liability for negligence of its employees that, if said insurance carrier will not inform said employee of the wrongful act of the hospital attendant and will pay the sum by which the expenses are increased as the result thereof, said indemnity company will reimburse it for such additional outlay, is not void as against public policy; and where said insurance carrier parts with its money in reliance upon such agreement, it is entitled to recover it from said indemnity company.

---

(1) 13 C. J., p. 493, n. 18, p. 496, n. 23, 24.   (2) 13 C. J., p. 490, n. 91 New, p. 493, n. 18, p. 506, n. 79, 83.   (3) 12 C. J., p. 883, n. 98; 13 C. J., p. 424, n. 19, p. 425, n. 20, 22 New, p. 427, n. 45; 32 Cyc., p. 1251, n. 23.   (4) 13 C. J., p. 539, n. 15.   (5) 11 C. J., p. 232, n. 2, 5, p. 236, n. 40, p. 278, n. 43; 13 C. J., p. 415, n. 44, p. 417, n. 57.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   Walter Perry Johnson, Judge.   Reversed.

The facts are stated in the opinion of the court.

John Ralph Wilson and Charles B. Morris for Appellant.

Chickering & Gregory for Respondent.

TYLER, P. J.—Action to recover money paid out by plaintiff at the instance and request of defendant.

The material facts disclose the following situation: Plaintiff was the insurance carrier of a certain company under

---

4.   See 6 R. C. L. 710; 6 Cal. Jur. 110.

a workmen's compensation policy. While this indemnity policy was in full force and effect one of the company's laborers suffered an injury, arising wholly by accidental means and in the course of his employment, by which he was ruptured, and he was thereupon conveyed at plaintiff's expense to a hospital for the purpose of having his injuries treated. During that process an employee of the hospital, in the performance of his duties, delivered to a surgeon attending the injured man a certain chemical preparation to be hypodermically injected into the patient's body. Through the negligence or carelessness of this attendant a different substance was substituted for this preparation, the injection of which caused pain and suffering to the patient and aggravated his injury, resulting in delay in his eventual recovery and an additional expense of one thousand dollars, the amount here sued for. The hospital carried an indemnity policy of insurance against liability for negligence of its employees with defendant. Both plaintiff and defendant knew of the mistake which had been made, and that in consequence thereof delay would result in the injured man's recovery. The latter knew nothing whatever concerning the matter. Defendant thereupon represented and stated to plaintiff that if it would not inform the patient of the injurious effects of the injection of the wrong preparation, and would pay the sum by which the expenses of the treatment had been increased in the hospital, defendant would reimburse plaintiff for such additional outlay. Plaintiff agreed to this arrangement, and after it had made payment to the injured employee of all moneys due from it as the insurance carrier of the employer, it paid the further sum of one thousand dollars in settlement of the additional expense arising in the manner above stated. It was upon this promise of reimbursement by defendant that the complaint is predicated.

A demurrer to the complaint was sustained upon the ground that the contract was against public policy and good morals and, therefore, unenforceable.

In rendering its decision upon this point the learned trial court expressed its views in writing, and respondent has favored us with a transcript thereof. It relies for an af-

firmance of the judgment upon the reasons therein given, namely, that the contract upon which the action is based is so mischievous in its tendency as to merit judicial proscription.

Before entering into a discussion of this subject it is perhaps as well to dispose of a preliminary objection which plaintiff interposes to the right of defendant to invoke the defense that the agreement is against public policy. It is contended by it that it would be a reproach to the law if respondent should be permitted by its trick and device to evade an obligation which it incurred to appellant by procuring from it the very favor which it now seeks to disavow under the pretext of the illegality of its promise.

It has not seemed satisfactory to some able and just minds that courts should hold that where parties to a contract are *in pari delicto* they will leave the delinquents where they find them, because such a rule permits one to plead his own wrong or infamy, as the case may be, and thereby obtain an unconscionable advantage over his adversary through being relieved of an obligation for the assumption of which he has received a valuable consideration. [1] Courts, however, are not called upon to settle any question of conscience between the parties, but are interested only in the higher duty of protecting society from the effect of contracts made in disregard of its interests. While, therefore, the defense advanced may be one which ill lies in the mouth of defendant to assert, nevertheless, if public policy requires it, the plea will be permitted even if it allows one to retain an advantage without rendering the stipulated return. [2] Estoppel does not apply in such a case. A contract void as against public policy cannot be treated as valid by invoking such principle, nor can a party thereto waive his right to set up the defense of illegality in an action thereon brought by the other party (*Millett* v. *Aetna Trust Co.,* 70 Ind. App. 451 [122 N. E. 344]). In a suit brought upon such a contract relief will be denied and the parties left where they are found (*Napa Valley etc. Co.* v. *Calistoga etc. Co.,* 38 Cal. App. 477 [176 Pac. 699]).

The sole question, therefore, with which we are concerned is the validity or invalidity of the agreement as it is presented to us. As above indicated, the trial court was of

the opinion that the agreement was void as being against public policy in that it tended to violate a trust. It was further of the opinion that it might be classed with those agreements made for the purpose of hindering or defeating the collection of an indebtedness by a creditor of one of the parties, and, therefore, void.

In support of the trust theory it is argued that ordinarily an injured man places himself unquestionably and trustingly under the care of those whom his employer or the employer's insurance carrier selects; and that this being so, the employer owes to his injured employee the duty of providing, directly or through the insurance carrier, reasonably good medical care and attention; that he becomes for the time being a sort of trustee of the injured employee's body for the purpose of restoring his health and vigor, and the hospital and attending physicians are agents for that purpose; and that if through the negligence of such agents the injuries are aggravated or restoration retarded, then not only is there a grievance sustained by the employee himself, but there results also an impairment in some degree of the state industrial energy, as the agreement leads to a lessening of the care and watchfulness due to an injured employee, contrary to the interests of society.

It may be that an agreement which is calculated to induce dereliction or laxity in the performance of a public or private duty is hostile to the interests of society, but the facts of this case do not in our opinion present such a situation. Plaintiff had paid out, and without question, a sum of money that it was bound to pay under its indemnity policy. It had further agreed at the request of the defendant to advance an additional sum for which the latter was solely responsible for the reason heretofore stated, upon the understanding that the injured employee should be kept in ignorance of the arrangement. This understanding, however, in no manner affected the patient's rights, and we fail to see how vice was imported into the transaction by reason thereof, or how the arrangement was in any manner controlled or affected by public policy.

[3] An exact definition of public policy would be difficult to formulate. One that has been frequently approved

is that adopted by Lord Brougham, namely, that no one can lawfully do anything which has a tendency to be injurious to the public welfare. The application of the principle to a given state of facts is not always easy though it admits of some degree of latitude. Public policy often changes as the law changes. It is manifest, therefore, that there can be no single or fixed standard governing it. The question, what is public policy in a given case, is as broad as the question of what is fraud. It is primarily the prerogative of the legislature to declare what contracts and acts shall be unlawful; but courts, following the spirit and genius of the law, written and unwritten, of a state, may declare void as against public policy contracts which, though not in terms specifically forbidden by legislation, are clearly injurious to the interests of society. When the fact is called to the attention of a court that a contract sought to be enforced is illegal it will refuse the plaintiff any relief and will generally leave the parties where it finds them. In determining what is public policy in a given jurisdiction recourse may be had not only to enacted law but also to the decisions of the courts of last resort. In considering this question many courts have cautioned against recklessness in condemning contracts as being against public policy. Thus, it has been said by an English judge that public policy is an unruly horse astride of which one may be carried into unknown paths. A similar caution is one to the effect that before a court refuses to recognize a contract which is made in good faith and which stipulates for nothing which is *malum in se* or *malum prohibitum* it should be satisfied that the advantage to accrue to the public from its holding is certain and substantial, not theoretical or problematical, and based upon certain economic or sociological problems. [4] The power to invalidate agreements on the ground of public policy is so far-reaching and so easily abused that it should be called into action only in cases where the dangerous tendency clearly and unequivocally appears from the contract itself. Courts are reluctant, therefore, to declare a contract void as against public policy, and will refuse to do so if by any reasonable construction it may be upheld.

[5] As above intimated, the mere agreement of the parties not to disclose their arrangement to the injured

employee, to our minds, in no manner encouraged a relaxed responsibility or a lessening of the care and watchfulness due to him, contrary to the interests of society, which would justify its denouncement. The plaintiff owed no duty to the employee to divulge to him the fact that his recovery had been delayed through carelessness. That was a matter between the patient and the institution employed to care for him, but which did not concern the plaintiff. The policy of the law is and always has been against intermeddling in suits or stirring up strife or litigation, and the quieting of disputes and the adjustment and settlement of litigation have always been and always should be favored (2 Elliott on Contracts, sec. 731); and at common law intermeddling was defined as champerty and maintenance, and was punishable by fine and imprisonment.

If, then, the insurance carrier owed no duty to the injured employee to divulge to him the arrangement it had entered into for the purpose of paying the additional expense of his illness, there certainly could be no relation of trust existing between them, and, consequently, no violation of such relation. It must be remembered that the employee is not here complaining of any injustice which he has suffered. The plaintiff has discharged its full liability under its indemnity policy, and in addition all amounts due (so far as it here appears) by reason of the delay in the patient's recovery attributable to the negligence of the hospital attendant. No confidential relation of any kind was breached, even assuming that such relation existed. And, we may add, to render a promise of the character here involved illegal it must have been for the sake of gain (*Ward* v. *Allen,* 2 Met. (Mass.) 53 [35 Am. Dec. 387]).

Nor can the agreement, as claimed, be properly classed with those condemned upon the ground of public policy which are entered into for the purpose of hindering or delaying the collection of an indebtedness by a creditor of one of the parties. While such agreements are inimical to the social policy, no question of that kind is here involved. There was no attempt to hinder or delay the collection of any sum due the injured employee. On the contrary, the arrangement insured to him, so far as the complaint shows, everything to which he was entitled.

The cases relied upon for an affirmance of the judgment do not support respondent's contention. The case of *Bliss* v. *Matteson,* 52 Barb. (N. Y.) 348, involved the validity of an agreement to control the action of the directors of a corporation in voting to pay plaintiff's claim irrespective of its legality. It was there held that an arrangement which is designed or which in its nature or effect tends to lead persons charged with the performance of trusts or duties for the benefit of others to violate or betray them is contrary to public policy. There is no question concerning the correctness of this rule.

*Johnston* v. *Fargo,* 184 N. Y. 379 [6 Ann. Cas. 1, 7 L. R. A. (N. S.) 537, 77 N. E. 388], involved the validity of an agreement whereby an employer sought to abridge by contract his common-law liability, and it was held that he could not do so as such an agreement was void as against public policy. The same may be said as to the application of the doctrine to this case (2 Elliott on Contracts, sec. 769 et seq.).

*Church* v. *Muir,* 33 N. J. L. 320 merely holds that a contract the purpose of which is to protect a debtor against just claims of creditors is void.

*Neville* v. *Dominion of Canada News Co.,* L. R. 1915, 3 K. B. 560, was a case where a newspaper for a consideration agreed to refrain from commenting upon a fraudulent scheme. The contract having its inception in fraud was very properly condemned.

In *Eggleston* v. *Pantages,* 103 Wash. 458 [175 Pac. 34], it appears that an action had been instituted for the appointment of a receiver by certain stockholders without the filing of a complaint (as, it seems, may be done in the state of Washington). After the papers had been served a contract was made between the parties whereby, in consideration of a promise to pay a certain sum of money, the plaintiff agreed to withhold the complaint from the files and give no information to anyone concerning the same or the commencement of the suit, thereby preventing those interested from learning the true state of facts. Here was a clear attempt to conceal judicial proceedings and to obstruct justice for the purpose of wronging others interested. Agreements of this character are clearly against public policy (2 Elliott on Contracts, sec. 716).

In conclusion it may be said that it seems clear to us that there is nothing in the agreement here involved that in any manner condemns it; and that the plaintiff, having parted with its money in reliance thereon, is entitled to recover it.

This conclusion renders unnecessary a discussion of the further question raised by appellant that it is possible for it to prove its execution without regard to the promise of secrecy, and that this being so the complaint in any event states a cause of action.

For the reasons given the judgment is reversed.

Knight, J., concurred.

Respondent's petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 2, 1925.

Lawlor, C. J., *pro tem.*, and Shenk, J., dissented.