[Civ. No. 20562. Fourth Dist., Div. Two. Jan. 4, 1980.]

JOANN BEYNON, Plaintiff and Appellant, v.
GARDEN GROVE MEDICAL GROUP et al., Defendants
and Respondents.

COUNSEL

Lintz, Williams & Rothberg and Leonard Sacks for Plaintiff and Appellant.

Bonne, Jones, Bridges, Mueller & O'Keefe and Jerrie S. Weiss for Defendants and Respondents.

OPINION

TAMURA, J.—Plaintiff appeals from an order denying her petition to confirm a medical malpractice arbitration award against defendants Garden Grove Medical Group and Edward Vas Nunes, M.D. Plaintiff's claim arose out of medical treatment rendered by defendants pursuant to a group prepaid health care plan. The court upheld defendants' con-

tention that the award was not binding because they had exercised the right reserved to them by the terms of the master policy to reject the arbitrators' decision and to require the dispute to be resubmitted to another arbitration panel of three doctors. The central issue on this appeal concerns the enforceability of the provisions of the master policy giving the health care provider the right to reject an arbitration decision without cause and to require resubmission of the controversy to a second arbitration panel.

The pertinent facts are not in dispute:

When plaintiff first went to work for her employer in February 1974, she was told that a health care service plan provided by the California Medical Group Health Plan, Inc., was available to employees of the firm and was given a pamphlet describing the plan. After reading the pamphlet she signed an enrollment card by which she applied for membership in the plan "as described in the master agreement and policy," effective as of May 1, 1974. Plaintiff received a welcoming letter and a membership card but was never provided with a copy of the master policy.

During late July or early August 1975, plaintiff received medical care and treatment from defendants pursuant to the health plan. A dispute arose over the quality of the treatment provided by defendants. Plaintiff's attorney notified defendants of her intention to sue them for medical malpractice and requested that if it be claimed that the dispute must be arbitrated to so inform him. Defendants' attorney responded that "Article XVI" of the master policy made arbitration the exclusive remedy for resolving all disputes arising under the agreement. Plaintiff's attorney requested and was provided a copy of the master policy and a copy of plaintiff's enrollment card. Meanwhile, plaintiff had filed her medical malpractice action against defendants. Following receipt of a copy of the master contract, plaintiff's counsel informed defendants' counsel that plaintiff had selected an arbitrator and requested defendants to do the same. Defendants nevertheless filed their answer together with a petition to compel arbitration. The petition was granted without opposition and the court made its order directing the parties to arbitrate the controversy "in accordance with the provisions of the agreement dated May 1, 1974."[1]

---

[1] The only document referring to the May 1, 1974, date is the enrollment card signed by plaintiff.

The master contract appended to and made a part of the petition to compel arbitration recites that it was entered into on July 23, 1975. .

The parties proceeded to arbitration before a panel of attorneys composed of one selected by each side and a neutral arbitrator selected by the two. Following some four days of hearings, the arbitrators rendered an unanimous decision finding that defendant Vas Nunes performed surgery on plaintiff in a negligent manner and that as a proximate result of the negligence plaintiff sustained damages in the sum of $60,000. An award was made in that amount.

Within 30 days after the arbitration award, defendants gave written notice to plaintiff and to the arbitrators that pursuant to paragraph B of article XVI (hereafter, paragraph B) of the master policy, they elected to reject the arbitrators' decision and to require resubmission of the dispute to a second panel of arbitrators composed of three doctors.[2] Plaintiff countered by filing a petition for confirmation of the award which defendants opposed on the basis of their rejection of the award

---

[2]Article XVI of the master agreeement reads as follows: "XVI.    ARBITRATION

"A. Any controversy among or between a Member, a Dependent Member, the heirs-at-law, personal representatives or dependents of such an individual, the Subscriber Group Representative and the Health Plan, a Medical Group, their agents or employees—as individuals or otherwise—pertaining to this Agreement or care or other benefits rendered pursuant hereto or refused as not covered hereunder, shall be submitted to arbitration. The petitioners in arbitration shall pay half the costs of such arbitration and the respondents shall pay the other half. Within fifteen (15) days after a Member, Dependent Member, heir-at-law, personal representative or dependent of a Member or Dependent Member, the Subscriber Group Representative, the Health Plan or a Medical Group gives notice to the other of demand for arbitration of said controversy, the parties to each side of the controversy shall appoint an arbitrator and give notice of such appointment to the parties on the other side. Within a reasonable time after such notices have been given, the two arbitrators so selected shall select a neutral arbitrator and give notice of the selection thereof to the parties. The written decision of a majority of the three (3) arbitrators shall be binding on all the parties involved, subject to subarticle XVI.B.

"B. If a dispute involves the quality or necessity of care and the Health Plan or a Medical Group rejects the decisions of such arbitration within thirty (30) days of receipt of the written decision thereof, the decision shall not be binding, and the dispute shall be submitted to a panel of three (3) qualified doctors licensed to practice medicine in the State of California. The parties to each side of the controversy shall appoint such a doctor, and the two (2) doctors shall select a third neutral such doctor within a reasonable time. The written decision of a majority of this panel shall be binding on all the parties involved.

"C. The arbitrators may require the submission of pleadings, briefs and other memoranda and documents, shall hold a hearing within a reasonable time from the date of notice of the selection of the neutral arbitrator and shall set forth their decision in writing, with their reasons and authority therefor. Except as otherwise provided herein, the arbitration shall be conducted and governed by the provisions of the California Code of Civil Procedure. Judgment upon a binding arbitration as provided for herein may be obtained in any court having jurisdiction. The arbitration procedure established by this Agreement is the sole and exclusive means for the settlement of any dispute arising hereunder."

under the terms of paragraph B. In a responsive declaration, plaintiff stated that she had never signed an agreement containing paragraph B, had never seen the master policy, and was not aware of the fact that paragraph B was a part of it. Plaintiff maintained that paragraph B was unenforceable because she was never made aware of its terms and on the further ground that its provisions were invalid as being in contravention of public policy. The court denied the petition and plaintiff appeals.[3]

Plaintiff contends, as she did below, that paragraph B is unenforceable because she never assented to its terms and because its provisions are void as against public policy. Plaintiff further contends that paragraph B is severable from those provisions of article XVI pursuant to which the arbitration proceedings were held and that the award should therefore have been confirmed. For reasons expressed below, we have concluded that plaintiff's contentions are sound and that the order denying confirmation of the award should be reversed.

## I

There is a strong public policy in this state favoring arbitration as a means of resolving disputes, including disputes over medical malpractice claims, because it is expeditious, inexpensive, and relieves overburdened courts.[4] (*Madden* v. *Kaiser Foundation Hospitals,* 17 Cal.3d 699, 706-707 [131 Cal.Rptr. 882, 552 P.2d 1178]; *Hawkins* v. *Superior Court,* 89 Cal.App.3d 413, 416 [152 Cal.Rptr. 491]; see *Wheeler* v. *St. Joseph Hospital,* 63 Cal.App.3d 345, 355-356 [133 Cal.Rptr. 345, 84 A.L.R.3d 343].) However, arbitration being consensual in nature (Code Civ. Proc., § 1281.2; *Steelworkers* v. *Warrior & Gulf Co.,* 363 U.S. 574, 582-583 [4 L.Ed.2d 1409, 1417-1418, 80 S.Ct. 1347]; *Freeman* v. *State Farm Mut. Auto. Ins. Co.,* 14 Cal.3d 473, 479 [121 Cal.Rptr. 477, 535 P.2d 341]), in order to be enforceable an agreement to arbitrate must have been openly and fairly entered into by the parties (*Wheeler* v. *St. Joseph Hospital, supra,* 63 Cal.App.3d 345, 356; *Windsor Mills, Inc.* v. *Collins & Aikman Corp.,* 25 Cal.App.3d 987, 993-994 [101 Cal.Rptr. 347]; *Player* v. *Geo. M. Brewster & Son, Inc.,* 18 Cal.App.3d 526, 534 [96 Cal.Rptr. 149].)

---

[3]In denying the petition to confirm the award, the trial judge stated: "I think the fair thing to do is to deny it without prejudice. You may have some other remedy, I can't think of it at the moment, and I feel for you, but I don't feel I have the authority based on what's before me to declare the agreement invalid."

[4]The policy also finds expression in recent legislation. (Code Civ. Proc., §§ 1141.10, 1295.)

■ Plaintiff does not deny the existence of an agreement to arbitrate but contends that under adhesion contract principles the provisions of paragraph B are unenforceable because they were never called to her attention when she enrolled in the plan and they unexpectedly and unreasonably limit the obligations of the health plan and health care provider. We agree.

■ Where a contract is adhesive, courts will not enforce a provision which limits the liabilities and duties of the stronger party unless such provisions are clear and conspicuous and will not operate to defeat the reasonable expectations of the weaker party. (*Madden* v. *Kaiser Foundation Hospitals, supra,* 17 Cal.3d 699, 710; *Steven* v. *Fidelity & Casualty Co.,* 58 Cal.2d 862, 878-879 [27 Cal.Rptr. 172, 377 P.2d 284]; *Wheeler* v. *St. Joseph Hospital, supra,* 63 Cal.App.3d 345, 356-357.) The term "adhesion contract" normally refers to a contract drafted and imposed by a party enjoying superior bargaining strength and offered to the weaker party, usually consumers of goods or services, on essentially a "take it or leave it" basis without opportunity for individual bargaining. (*Smith* v. *Westland Life Ins. Co.,* 15 Cal.3d 111, 122, [123 Cal.Rptr. 649, 539 P.2d 433]; *Steven* v. *Fidelity & Casualty Co., supra,* 58 Cal.2d 862, 882; *Wheeler* v. *St. Joseph Hospital, supra,* 63 Cal.App.3d 345, 356.)

■ In the case at bench, there was no evidence that the agreement was negotiated by parties having a parity of bargaining strength or that plaintiff had a realistic opportunity to bargain or to seek a more favorable contract. (See *Jones* v. *Crown Life Ins. Co.,* 86 Cal.App.3d 630, 638 [150 Cal.Rptr. 375].) The provisions of paragraph B were never called to plaintiff's attention when she enrolled in the plan. The brochure prepared and distributed by the health plan, a copy of which was furnished plaintiff before she decided to enroll, made only the following brief reference to arbitration: "Disputes involving matters pertaining to the prepaid plans and care received or refused must be submitted to arbitration in accordance with the Agreement." There was no reference to the provisions of paragraph B, if indeed it was then a part of the master policy. As plaintiff correctly points out, the record does not contain a copy of the master policy in force in 1974 when plaintiff enrolled. Defendants base their right to reject the arbitration award and to require rearbitration on the basis of paragraph B of the master policy entered into on July 23, 1975; they made no showing that paragraph B or its equivalent was a part of the master policy in force when plaintiff enrolled in 1974.

That the provisions of paragraph B unreasonably limit the obligations of the health plan and health care provider and defeat the reasonable expectations of one enrolling in the plan is manifest. The term arbitration normally imports a dispute resolution procedure which is speedy, economical and "bears equally" on the parties. (*Madden v. Kaiser Foundation Hospitals, supra,* 17 Cal.3d 699, 711.) The provisions of paragraph B, however, are weighted in favor of the health plan and provider of services and against members and can render arbitration an expensive and protracted proceeding. By granting to only the health plan or health care provider the unilateral right to reject an arbitration award without cause and to require rearbitration, paragraph B enables the health plan and health care provider to transform arbitration into virtually a "heads I win, tails you lose" proposition. Furthermore, inasmuch as the contract requires each side to bear one-half of the cost of arbitration irrespective of the outcome, a member who has already incurred substantial expenses in the first arbitration proceeding, as has plaintiff, and who faces the prospect of having to pay one-half the cost of a second and perhaps more costly proceeding before a panel of doctors might well be discouraged from further pursuit of the claim in the only forum available for the resolution of the dispute. (See *Spence v. Omnibus Industries,* 44 Cal.App.3d 970, 976 [119 Cal.Rptr. 171].)

Inasmuch as the master policy in the case at bench possesses the attributes of a contract of adhesion, putting aside for the moment the substantive validity of paragraph B which we consider later in this opinion, plaintiff is not bound by the provisions of paragraph B.

Defendants argue that under principles expressed in *Madden v. Kaiser Foundation Hospitals, supra,* 17 Cal.3d 699, plaintiff is bound by paragraph B because the master policy was negotiated on behalf of employees of her employer by a representative having a parity of bargaining strength with the health plan. Any resemblance between *Madden* and this case is purely superficial; there are fundamental differences between the two which render *Madden* inapposite.

First, there is no evidence that the master policy entered into on July 23, 1975, of which paragraph B is a part, was negotiated by an agent or representative of the employees. All we have is a recital in the master policy that it was entered into between the California Medical Group Health Plan, Inc. "and the UNITED BUSINESS LEAGUE GROUP INSURANCE TRUST (the 'Subscriber Group Representative'), a trust

established for the benefit of employers who are members of the United Business League and their employees...." There was no evidence concerning the nature, purpose, or organizational structure of the United Business League or whether it in fact acted as the agent or representative of employees of the employer members of the business group in negotiating the master policy. In *Madden,* the statute empowered the Board of Administration of the State Employees Retirement System to enter into group health contracts for state employees (Gov. Code, §§ 22774, 22790, 22793) and the law provided that at least one-third of the board members be comprised of persons elected by the public employee members of the retirement system (Gov. Code, § 20100). Thus, in negotiating the contract the board was doing so as the agent of the state employees and was obligated to act in their best interests.

But even assuming that the United Business League be deemed in law to have been acting as the agent of employees of employer members of the organization, as well as the employers, in negotiating the master policy (see *Madden* v. *Kaiser Foundation Hospitals, supra,* 17 Cal.3d 699, 705, fn. 5; *Elfstrom* v. *New York Life Ins. Co.,* 67 Cal.2d 503, 512 [63 Cal.Rptr. 35, 432 P.2d 731]; *Blos* v. *Bankers Life Co.,* 133 Cal. App.2d 147, 150 [283 P.2d 744]), the implied authority of an agent to do everything "proper and usual" to effectuate the purposes of the agency (Civ. Code, § 2319) cannot be stretched to authorize the inclusion in the master policy of the extraordinary provisions of paragraph B. A provision granting a unilateral right to one party to reject an arbitration award without cause and to require rearbitration before a special panel is neither proper nor usual.

Finally, while the *Madden* court determined that the Kaiser plan lacked the basic attributes of an adhesion type contract and that therefore the plaintiff state employee was bound by the arbitration provision even though she had no actual knowledge that it had been made a part of the contract, the court emphasized that the arbitration provision of the Kaiser plan was one which bore equally on both parties, did not limit the insurer's liability or obligation, and was one which merely substituted one neutral forum for another. Thus, in rejecting a suggestion that the court adopt a rule that no arbitration provision in a group health insurance contract will bind a beneficiary absent proof that the beneficiary had actual knowledge of the provision (17 Cal.3d at p. 709, fn. 11), the court was speaking of the usual arbitration provision. The court stated that the requirement of actual knowledge on the part of the

beneficiary "would be viable only if arbitration were an extraordinary procedure, and one especially disadvantageous for the beneficiary—propositions which we have rejected in *Doyle* and other cases cited in this opinion." (*Id.*, at p. 709, fn. 11.) The provisions of paragraph B are "extraordinary" and "especially disadvantageous" for the beneficiary. A subscriber to a health care service plan cannot be bound by such provisions where they were not called to his or her attention at the time of enrollment or at least before the cause of action arose.

In *Davis* v. *Blue Cross of Northern California,* 25 Cal.3d 418 [158 Cal.Rptr. 828, 600 P.2d 1060], our high court's most recent decision pertaining to arbitration provisions in health insurance contracts, the court emphasized the importance of apprising a beneficiary of the availability of arbitration and the means of initiating it. The trial court determined that Blue Cross waived its right to compel arbitration by breaching its covenant of good faith and fair dealing in failing to inform claimants of the right to arbitration when rejecting their claims. In affirming the order denying Blue Cross' petition to compel arbitration, the Supreme Court observed that the trial court's finding "that the average insured would not know of a right to arbitration buried in an obscure provision of a hospitalization policy" unless informed "squares with common experience" and added: "Without advice on the subject, the average insured is not likely to be aware of a potential arbitration remedy or of the means of initiating such a procedure." (*Id.*, at p. 429, fn. omitted.)

In stressing the importance in the health care service contract context of a beneficiary's awareness of the existence of an arbitration remedy, the court in *Blue Cross* noted that in enacting recent legislation governing health care service plans, "the Legislature included a number of specific provisions requiring such health service plans (1) to explicitly disclose the existence of any arbitration procedures in their informational brochures (Health & Saf. Code, § 1363, subd. (a)(10))[5] and (2)

---

[5]Health and Safety Code section 1363, subdivision (a)(10), provides: "(a) The commissioner shall require for use by each plan disclosure forms or materials containing such information regarding the benefits, services, and terms of the plan contract as the commissioner may require, so as to afford the public, subscribers, and enrollees with a full and fair disclosure of the provisions of the plan in readily understood language and in a clearly organized manner. The commissioner may require that such materials be presented in a reasonably uniform manner so as to facilitate comparisons between plan contracts of the same or other types of plans. Nothing contained in this chapter shall

to include in the subscriber's contract a provision which sets forth, inter alia, 'the type of disputes subject to arbitration, the process to be utilized, *and how it is to be initiated.*' (Italics added.) (Health & Saf. Code, § 1373, subd. (i).)" (*Davis* v. *Blue Cross of Northern California, supra,* 25 Cal.3d 418, 430.) The court commented that the statutes recognize the importance of giving insureds "timely and meaningful notice of the procedure so that they can realistically resort to arbitration if they decide to do so. (Cf. Health & Saf. Code, § 1368, subds. (b) and (c).)" (*Id.,* at p. 430.)

The policy of requiring full and fair disclosure of the nature and scope of the arbitration provisions of a health plan contract and the procedure for initiating arbitration emphasized by *Blue Cross* fortifies our conclusion that plaintiff was not bound by the provisions of paragraph B. Defendants contend that the health plan observed the policy of disclosure in that its information brochure stated that disputes "must be submitted to arbitration in accordance with the Agreement." Even though the statement may be literally true, the failure to tell subscribers that the health plan or health care provider has the right to reject an award without cause and to require rearbitration before a special panel rendered the statement misleading.[6]

---

preclude the commissioner from permitting such disclosure form to be included with the evidence of coverage or plan contract.

"The disclosure form shall provide for at least the following information, in concise and specific terms, relative to the plan, together with such additional information as may be required by the commissioner, in connection with the plan or plan contract:

". . . . . . . . . . . .

"(10) If the plan utilizes arbitration to settle disputes, a statement of that fact."

[6]The Knox-Mills Health Plan Act in force at the time plaintiff enrolled in the health plan contained the following provisions relating to misleading statements in health plan advertising or contracts:

Former Government Code section 12531 provided: "For the purposes of this article:

"(a)  A statement or item of information shall be deemed to be untrue if it does not conform to fact in any respect which is or may be significant to a member of, or person considering enrollment in, a health care service plan;

"(b)  A statement or item of information shall be deemed to be misleading, whether or not it may be literally untrue, if, in the total context in which such statement is made or such item of information is communicated, such statement or item of information may be reasonably understood by a reasonable person, not possessing special knowledge regarding health care coverage, as indicating any benefit or advantage or the absence of any exclusion, limitation, or disadvantage of possible significance to a member of, or person considering enrollment in, a health care service plan, if such benefit or advantage or absence of limitation, exclusion or disadvantage does not in fact exist;

"(c)  A membership contract shall be deemed to be deceptive if the contract taken as a whole, and with consideration given to typography and .format, as well as language, shall be such as to cause a reasonable person, not possessing special knowledge regarding health care coverage and contracts therefor, to expect benefits, services, rates

## II

Apart from the unenforceability of paragraph B on adhesion contract principles, plaintiff contends that its provisions are void as against public policy under the rationale of *Tunkl* v. *Regents of University of California,* 60 Cal.2d 92 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693]. Plaintiff argues that paragraph B has for its object "indirectly" the exculpation of the health care provider from liability for its negligence in violation of Civil Code section 1668.[7]

█ We have concluded that the provisions of paragraph B are violative of public policy and are therefore invalid though not on the ground that they are in violation of Civil Code section 1668. Although paragraph B is heavily weighted in favor of the health care provider, it does not totally exempt it from its negligence. There is, however, another sound basis for declaring such fundamentally unfair and unreasonable provisions in a health service plan contract invalid on public policy grounds.

As the Supreme Court noted in *Blue Cross,* because of the widespread public reliance on health care service contracts for hospital and

---

or other advantages which the contract does not provide or which the health care service plan issuing such contract does not regularly make available for members covered under such contract."

Former Government Code section 12532 provides: "It shall be a violation of this article for any health care service plan or any representative of a health care service plan to use, or cause, or knowingly permit the use of:

"(a)   Advertising which is untrue or misleading;

"(b)   Solicitation which is untrue or misleading;

"(c)   Any form of membership contract which is deceptive."

Health and Safety Code section 1360 currently provides in pertinent part:

"(a)   No plan, solicitor, solicitor firm, or representative shall use or permit the use of any advertising or solicitation which is untrue or misleading, or any form of evidence of coverage which is deceptive. For purposes of this article:

"  .    .    .    .    .    .    .    .    .    .

"(2)   A written or printed statement or item of information shall be deemed misleading whether or not it may be literally true, if, in the total context in which the statement is made or such item of information is communicated, such statement or item of information may be understood by a person not possessing special knowledge regarding health care coverage, as indicating any benefit or advantage, or the absence of any exclusion, limitation, or disadvantage of possible significance to an enrollee, or potential enrollee or subscriber, in a plan, and such is not the case."

[7]Civil Code section 1668 provides: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

medical care, such contracts have in recent years been the subject of state regulation. In 1965, the Legislature enacted the Knox-Mills Health Plan Act (Stats. 1965, ch. 880, former Gov. Code, § 12530 et seq.) which included among its provisions the requirement that health care service plans register with the Attorney General and submit to that office a copy of the membership contract proposed to be issued and copies of all proposed advertisements to be used. (Former Gov. Code, § 12537.) The act also proscribed deceptive membership contracts and defined and proscribed misleading advertising or solicitation. (Former Gov. Code, §§ 12531, 12532, see fn. 6, *ante.*) The Knox-Mills Health Plan Act was superseded by the more comprehensive Knox-Keane Health Care Service Plan Act of 1975 (Stats. 1975, ch. 941, § 1; Health & Saf. Code, § 1340 et seq.) which became operative July 1, 1976.

Health and Safety Code section 1367 currently provides that health care service plans shall meet prescribed standards, including the following: "(h) All contracts with subscribers and enrollees, including group contracts, and all contracts with providers, and other persons furnishing services, equipment, or facilities to or in connection with the plan, *shall be fair, reasonable, and consistent with the objectives of this chapter.*"[8] (Italics supplied.) ▇ It is ordinarily the prerogative of the Legislature to declare what contracts are unlawful but courts may declare void as against public policy contracts which, though not specifically forbidden by the Legislature, are clearly injurious to society. (*Altschul* v.

---

[8]The objectives of the Knox-Keane Act are set forth in Health and Safety Code section 1342, which reads: "It is the intent and purpose of the Legislature to promote the delivery of health and medical care to the people of the State of California who enroll or subscribe for the services rendered by a health care service plan or specialized health care service plan by:

"(a)  Assuring the continued role of the professional as the determiner of the patient's health needs which fosters the traditional patient professional relationship of trust and confidence.

"(b)  Assuring that subscribers and enrollees are educated and informed as to the benefits and services available so as to enable a rational consumer choice in the marketplace.

"(c)  Protecting the potential subscriber or enrollee from fraudulent solicitations, deceptive methods, misrepresentations, or practices which are inimical to the general purpose of enabling a rational choice for the consumer public.

"(d)  Help assure the best possible health care for the public at the lowest possible cost by transferring the financial risk of health care from the patient to the providers.

"(e)  Promoting effective representation of the interests of subscribers and enrollees.

"(f)  Assuring the financial stability thereof by means of proper regulatory procedures.

"(g)  Assuring that subscribers and enrollees receive available and accessible health and medical services rendered in a manner providing continuity of care."

*Sayble,* 83 Cal.App.3d 153, 162 [147 Cal.Rptr. 716], citing *Safeway Stores* v. *Retail Clerks etc. Assn.,* 41 Cal.2d 567, 574-575 [261 P.2d 721]; see, e.g., *Building Service Union* v. *Gazzam,* 339 U.S. 532, 536 [94 L.Ed. 1045, 1049-1050, 70 S.Ct. 784]; *Twin City Pipe Line Co.* v. *Harding Glass Co.,* 283 U.S. 353, 357 [75 L.Ed. 1112, 1116-1117, 51 S.Ct. 476, 83 A.L.R. 1168]; *James* v. *Marinship Corp.,* 25 Cal.2d 721 [155 P.2d 329, 160 A.L.R. 900]; *Kinner* v. *World Sav. & Loan Assn.,* 57 Cal.App.3d 724, 728-729 [129 Cal.Rptr. 400]; *Maryland C. Co.* v. *Fidelity etc. Co.,* 71 Cal.App. 492, 497 [236 P. 210].)  ■  Although section 1367 did not become operative until July 1, 1976, which was after the date of execution of the master policy in question, there is no judicial intrusion into the legislative prerogative in declaring the provisions of paragraph B invalid on public policy grounds. The statutory standard that health care service contracts be "fair" and "reasonable" is but an expression of adhesion contract principles which courts have developed and applied over the years in the insurance context and an articulation of the spirit and purposes of the Knox-Mills Health Plan Act which the new act superseded. In light of the almost universal public reliance upon prepaid health plan service contracts and insurance as a means of obtaining and paying for hospital and medical services, provisions which can render arbitration a one-sided procedure weighted against the subscriber are manifestly harmful to the public interest. Arbitration is supposed to provide a speedy and inexpensive means of resolving disputes in a neutral forum. Invocation of the provisions of paragraph B, however, renders arbitration an expensive and protracted proceeding favoring the health plan and the health care provider. The provisions of paragraph B contravene public policy and are invalid.[9]

## III

■  The question remains whether the arbitration award should be confirmed.

The answer turns on whether paragraph B is severable from the remainder of article XVI. If a contract has several distinct objects, of

---

[9]Our conclusion that the provisions of paragraph B are invalid is not to be construed as a holding that an arbitration agreement in a health care contract may not provide for resolution of the dispute by a panel of doctors selected by the parties. It is the unilateral power to reject an arbitration award without cause and require rearbitration which is the concern of the court.

which one at least is lawful, the contract is valid and enforceable as to the lawful object provided it is clearly severable from the rest. (Civ. Code, § 1599.) Mr. Witkin notes that "later California cases take a very loose view of severability, enforcing valid parts of an apparently indivisible contract where the interests of justice or the policy of the law (as the court conceives it) would be furthered." (1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 343, p. 290.)

In *Richards* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 64 Cal.App.3d 899, 906 [135 Cal.Rptr. 26], the court invalidated a contractual provision which required that arbitration of disputes arising under the contract be conducted in accordance with the rules of the New York Stock Exchange but nevertheless held that in light of the strong state policy favoring arbitration, the agreement to arbitrate, if otherwise untainted, was severable from the invalid portion.

In the case at bench, the provisions of paragraphs A and C of article XVI constitute a complete and valid agreement to submit disputes arising under the agreement to arbitration and provide the procedure for the initiation of the proceedings. Those provisions are clearly severable from and untainted by the provisions of paragraph B.

■ Defendants contend that plaintiff either waived or is estopped from objecting to the provisions of paragraph B because she went to arbitration without objecting to those provisions. The contention is without merit. Plaintiff herself was never aware of the existence of paragraph B until defendants rejected the award. Moreover, neither in their correspondence with plaintiff's attorney nor in the petition to compel arbitration did defendants specifically indicate that the arbitration would be subject to their rejection without cause and to rearbitration. Under the *Blue Cross* rationale, it is more likely that defendants have waived their right to assert the provisions of paragraph B. Furthermore, estoppel presupposes that the person asserting it has been prejudiced by the conduct of the other. Defendants have not shown how they were prejudiced by plaintiff's failure to object to the provisions of paragraph B before arbitration proceedings were ordered and held. ■ In any event, a contractual provision which is void as against public policy cannot be validated by estoppel or waiver. (*Russell* v. *Soldinger,* 59 Cal.App.3d 633, 646 [131 Cal.Rptr. 145]; *Kiely Corp.* v. *Gibson,* 231 Cal.App.2d 39, 46 [41 Cal.Rptr. 559].)

CONCLUSION

We conclude that plaintiff is not bound by the provisions of paragraph B of article XVI of the master agreement because she never agreed to them and because the provisions are void as against public policy. We further conclude that the remainder of article XVI providing for arbitration of disputes is severable from paragraph B and that the arbitration award should therefore be confirmed.

DISPOSITION

Order denying the petition to confirm the award is reversed with directions to enter an order confirming the same.

Gardner, P. J., and McDaniel, J., concurred.