Filed 3/4/21 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ERENDIRA CISNEROS ALVAREZ, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ALTAMED HEALTH SERVICES CORPORATION et al., <br><br> Defendants and Appellants. | B305155 <br><br> (Los Angeles County Super. Ct. No. 19STCV13921) <br><br> ORDER MODIFYING OPINION |

THE COURT:

Good cause appearing, the opinion in the above entitled matter, filed on February 4, 2021, Certified for Publication, is hereby modified as follows:

The first word "Respondent" of the last full paragraph on page 26 (starting with "Respondent contends the appellate arbitral") should be deleted and replaced with the word "Altamed." Thus, the first sentence of the last full paragraph of page 26 will read as follows:

Altamed contends the appellate arbitral review provision in this case is identical to the provision considered by the Court of Appeal in *Cummings v. Future Nissan* (2005) 128 Cal.App.4th 321 and held valid and enforceable.

[There is no change in the judgment.]

_____

BIGELOW, P. J.                    GRIMES, J.                    STRATTON, J.

Filed 2/4/21 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ERENDIRA CISNEROS ALVAREZ,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALTAMED HEALTH SERVICES CORPORATION et al.,<br><br>    Defendants and Appellants. | B305155<br><br>(Los Angeles County<br>Super. Ct. No. 19STCV13921) |

    APPEAL from an order of the Superior Court of Los Angeles County, Michelle Williams Court, Judge. Reversed and remanded with directions.

    Lewis Brisbois Bisgaard & Smith, Raul L. Martinez, John L. Barber and Rachel J. Lee for Defendants and Appellants.

    Javanmardi Law|Holmquist Law, Peter A. Javanmardi and Marc A. Holmquist for Plaintiff and Respondent.

————————————————

Respondent Erendira Cisneros Alvarez sued appellants Altamed Health Services Corporation, Altamed Health Services Network, Inc. and Joumana Rechdan (collectively Altamed) on claims related to her employment with Altamed. Altamed appeals from the trial court's order denying its motion to compel arbitration of the claims. Altamed contends the parties had a valid arbitration agreement which was not revocable due to procedural or substantive unconscionability or the failure of Altamed's CEO to sign it. We agree, although we do sever one provision. We find the trial court erred in denying the motion to compel arbitration, order Paragraph 5 authorizing review by a second arbitrator severed, and remand the matter to enter an order granting the motion.

## BACKGROUND

On December 8, 2014, Altamed made an offer of employment to respondent. Altamed sent respondent an offer letter the same day. The offer letter reads in part: "It is our sincere hope and belief that our relationship be long and mutually rewarding. In those rare cases when a dispute arises around your employment with Altamed, we believe it is in all of our best interests to resolve it as quickly and fairly as we can. [¶] Therefore, to avoid costly and time consuming litigation, we have adopted an arbitration process that applies as a condition of employment. Please review and then sign the enclosed Arbitration Agreement and return with your signed offer." The letter stated that to accept the offer, respondent had to acknowledge it by email or facsimile by December 9, 2014.

The parties agree respondent accepted the employment offer. Respondent puts her acceptance on December 9, Altamed on December 18, 2014. At some point, she signed the portion of

2

the offer letter entitled "Acknowledgement." That section begins by stating, "By signing and dating this letter below I, Erendira Cisneros, accept the offer of employment described in the above letter." She dated it "01-05-14.[sic]"

Respondent declared that she did not remember receiving or signing an arbitration agreement at the time she received the offer letter. Elaine Diaz, an Altamed human resources manager, stated in her declaration that a copy of the agreement was sent with the letter. The record on appeal contains a copy of an arbitration agreement on an Altamed letterhead which contains a signature for Erendira Cisneros. It is dated "12-18-14." The signature on the agreement appears identical to respondent's signature on the acknowledgement of the letter offer. Respondent herself attached a copy of the signed acknowledgement of the offer letter as an exhibit to her declaration and stated that it was a true and correct copy of the letter. Respondent does not claim the signature was a forgery, and the trial court did not make an express or implied finding that respondent had not signed the arbitration agreement. We treat the signature as genuine.

The arbitration agreement is two pages long, including the signature block for respondent. It is entitled "EMPLOYMENT AT-WILL AND ARBITRATION AGREEMENT CALIFORNIA." The title is the first line of text on the page, is larger than the text in the body of the agreement and appears to have been bolded. The font in the body of the agreement appears virtually identical in size and form to the font used in the offer letter.

The first paragraph reaffirms the at-will nature of respondent's employment. The arbitration provisions begin in the second paragraph. The paragraph begins by stating: "I

further agree and acknowledge that the Company and I will utilize binding arbitration as the sole and exclusive means to resolve all disputes. . . ."

The second sentence of the second paragraph states:  "The Company and I each specifically waive and relinquish our right to bring a claim against the other in a court of law and this waiver shall be equally binding on any person who represents or seeks to represent me or the Company in a lawsuit against the other in a court of law."  The seventh and final sentence in the second paragraph states:  "By this binding arbitration provision, both I and the Company give up our right to trial by jury of any claim I or the Company may have against each other."  The entire second paragraph is on the first page of the agreement and is in the same font as every other paragraph of the agreement.

Respondent began work in January 2015.  Altamed terminated her employment in April 2017.  Respondent filed a lawsuit against Altamed in April 2019, alleging various violations of FEHA, wrongful discharge in violation of public policy, defamation, and intentional infliction of emotional distress.  Altamed filed its answer in September 2019 and then a motion to compel arbitration in October 2019.  The trial court denied the motion and this appeal followed.

## DISCUSSION

In ruling on a motion to compel arbitration, a trial court must make two determinations.  First the trial court must determine whether there is a valid agreement to arbitrate.  If so, the trial court must grant the order unless, as relevant here, a ground for revocation of the agreement exists.

A party who files a motion to compel arbitration "bears the burden of proving the existence of a valid arbitration agreement

by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense.  [Citation.]  In these summary proceedings, the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination." (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.)

Both the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and the California Arbitration Act (Code Civ. Proc., § 1280 et seq.) favor enforcement of valid arbitration agreements.  (*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765; *Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 25–26, [58 Cal.Rptr.3d 434, 157 P.3d 1029] [strong public policy in favor of arbitration].)[1]

'Through the comprehensive provisions of the California Arbitration Act (Code Civ. Proc., § 1280 et seq.), 'the Legislature has expressed a "strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." ' [Citation.]  As with the FAA (9 U.S.C. § 1 et seq.), California law establishes 'a presumption in favor of arbitrability.' [Citation.]

---

[1]    The arbitration agreement in this matter states Altamed is engaged in interstate commerce and so arbitration will be "under the Federal Arbitration Act ('FAA') in conformity with procedures of the California Arbitration Act."  "When it applies, the FAA preempts any state law rule that ' "stand[s] as an obstacle to the accomplishment of the FAA's objectives." ' [Citations.]  (*Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 23.)  The parties have not identified any such obstacle in this case.

An agreement to submit disputes to arbitration 'is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract.' (Code Civ. Proc., § 1281; see 9 U.S.C. § 2.)" (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*OTO*).) Put differently, an arbitration agreement will be enforced unless grounds for its revocation exist. One such ground is unconscionability, a " ' "[g]enerally applicable contract defense [which] may be applied to invalidate arbitration agreements without contravening" the FAA' or California law." (*Ibid.*)

As respondent points out, Altamed did not request a statement of decision. The trial court did provide an informal written explanation for its ruling. In giving this explanation, the trial court did not expressly rule on the validity of the arbitration agreement, but did expressly consider whether the agreement was unconscionable.

"A party's failure to request a statement of decision when one is available has two consequences. First, the party waives any objection to the trial court's failure to make all findings necessary to support its decision. Second, the appellate court applies the doctrine of implied findings and presumes the trial court made all necessary findings supported by substantial evidence." (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 970.)

At the same time, "[i]nterpreting a written document to determine whether it is an enforceable arbitration agreement is a question of law subject to de novo review when the parties do not offer conflicting extrinsic evidence regarding the document's meaning." (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 60.) Similarly, if the facts are undisputed, a trial court's ruling on a motion to compel arbitration is reviewed

6

de novo.  (*Brown v. Wells Fargo Bank, N.A.* (2008)
168 Cal.App.4th 938, 953; see *Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 707.)

Here, although the parties do not agree on the date respondent accepted Altamed's offer letter, that date is relevant only in relation to her signature on the arbitration agreement. Altamed agrees respondent accepted the offer letter before she signed the arbitration agreement.  Thus, there are no factual disputes.

I.     ***The Arbitration Agreement Is Valid.***

The trial court did not expressly rule on the issue of whether the parties had reached an agreement to arbitrate, but did state it agreed with one of the arguments made by respondent in support of her contention that the agreement was revocable. Respondent argued:  (1) the agreement was a modification of respondent's employment agreement with Altamed and was not valid because as a modification it had to be signed by Altamed's CEO (and it was not); (2) defendants Altamed Health Network and Joumana Rechdan were not parties to the arbitration agreement; and (3) she did not knowingly agree to waive her right to a jury trial.[2]

---

[2]     Respondent made additional arguments in her trial brief under the heading "No Arbitration Agreement Was Entered Into Between The Parties" but these are fundamentally arguments the agreement is procedurally unconscionable.  She has repeated these arguments on appeal, and we consider them in our discussion of unconscionability.

The trial court rejected the first two arguments, stating "Indication of an intent for the employer to be bound by the agreement [is] sufficient in the absence of an employer signature. The agreement states that both employer and employee will be bound."

The trial court agreed with respondent's third argument challenging the jury waiver, stating: "The court finds [respondent] never knowingly waived her right to a jury trial. Neither the offer letter nor the arbitration agreement contains the word 'jury' much less stating that the parties were waiving the constitutional right. The statements that the arbitration was adopted to avoid costly and time-consuming litigation and that the parties waive the right to bring a claim in a court of law are not highlighted in any way, but in the body of the offer letter and arbitration agreement in the same print as the rest of the terms. There is nothing to put an employee on notice that this is a waiver of the right to present a case to a jury."

Altamed contends the court's ruling is clearly erroneous on this issue. We agree. The arbitration agreement *does* contain the word "jury" and it uses the word as part of an express waiver provision for respondent's and Altamed's right to trial by jury. Because the trial court correctly rejected respondent's other claims that no agreement was made, the arbitration agreement is valid.

A.    *Respondent Knowingly Waived Her Right to a Jury Trial.*

Respondent acknowledges the trial court was mistaken about the absence of a jury waiver provision. However, she contends the trial court was correct that she did not knowingly agree to waive her right to a jury trial. She claims the trial court

8

read the agreement "several times and deemed the agreement to be incredibly difficult to read. The trial court was not able to find the language that waive[ ] her right to a jury trial because the typeface was so small, it was single spaced, there were no headings and the arbitration language was not highlighted in any way."

Respondent does not provide a record cite to support her claim the trial court deemed the argument incredibly difficult to read. There is no such statement in the court's ruling.

We are surprised by the trial court's inability to find the word "jury" or the jury provision in the arbitration agreement. The typeface of the agreement appears to be the same size as the offer letter and the spacing is the same as well.[3] Moreover, the typeface is also the same height as the trial court's ruling, at least as that document appears in the appellate record. The court's ruling is also single-spaced. We have not found any of these documents physically difficult to read.

The arbitration agreement is not lengthy. The entire agreement is two pages long, but almost one page is taken up with the letterhead, title, signature block, and the paragraph reaffirming respondent's at will status. The jury waiver sentence is in the first paragraph discussing arbitration, which is the second paragraph of the agreement as a whole. That second paragraph is seven sentences long. It begins by stating arbitration will be "the sole and exclusive means to resolve all disputes that arise out of" respondent's employment, and that respondent and Altamed waive and relinquish their right to bring

---

[3]     Respondent has not complained that she was unable to read her offer letter.

9

claims in a court of law.  Several sentences describing which claims are subject to arbitration follow.  The jury waiver is the last sentence in the paragraph.  It is not sandwiched in between other topics and is not difficult to find.

Respondent claims that "]t]ypically, valid and enforceable arbitration agreements highlight this specific [jury] waiver by enlarging the font size and making it bold face typeface." She cites no evidence to support this claim, and no legal authority showing it is a practice or a requirement.  "We may and do "disregard conclusory arguments that are not supported by pertinent legal authority.' " (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277.)

Respondent also contends her jury waiver was not knowing and valid because when she "accepted" Altamed's offer on December 9, she did not have a copy of the arbitration agreement and so the provisions of that agreement were not binding on her.  She compares her situation to that of the employee in *Romo v. Y-3 Holdings* (2001) 87 Cal.App.4th 1153.  In that case, the employee was given a lengthy employee handbook.  Section VIII of the handbook contained a bare statement that the parties agreed to arbitrate their claims.  The last page of Section VIII contained a line for a signature but the employee did not sign it.  He did sign the last page of the handbook where he acknowledged receiving and reading the handbook.  The Court of Appeal found the employee had not agreed to the arbitration provision because "the employee handbook contains two separate and severable agreements:  (1) the agreement to arbitrate which is the subject of section VIII; and (2) an agreement to be bound by the 'benefits,' 'policies,' 'rules' and 'procedures' contained within the remaining sections of the employee handbook." (*Romo v. Y-3 Holdings, Inc.,*

10

*supra*, 87 Cal.App.4th 1153, 1159.) The court further found that section VIII was intended to be a stand-alone agreement and that it "contemplates a signature from the employee separate from that required" at the end of the handbook. (*Ibid*.) Thus, the court's finding that the employee did not agree to arbitrate was premised on the employee's decision not to sign the separate arbitration agreement.

Here, there was one signature line in the offer letter and respondent signed it. More importantly, respondent also signed the separate arbitration document. She has nothing in common with the employee in *Romo* who left the signature line on the arbitration document blank.

Respondent also contends "any bargain to waive the right to a judicial forum for civil rights claims . . . in exchange for employment or continued employment must at least be express: the choice must be presented to the employee and the employee must explicitly agree to waive the specific right in question. [(*Nelson v. Cyprus Bagdad Copper Corp.* (9th Cir. 1997) 119 F.3d 756, 762; *Prudential Insurance Co. of America v. Lai* (9th Cir. 1994) 42 F.3d 1299, 1305.)]"[4] She contends her situation is identical to the scenario before the court in *Nelson*.

---

[4]     *Nelson* and *Lai* are based on Congressional intent to restrict an employee's waiver of the rights provided by the Americans with Disabilities Act and Title VII respectively. These holdings have no application to respondent's common law state claims, or to her statutory claims which are not based on the ADA or Title VII. California law does not require arbitration agreements to contain an express waiver of the right to a jury.

11

In *Nelson*, after accepting employment, the employee was presented with a handbook containing an arbitration provision. He was not advised that "by not quitting his job he was somehow entering into an agreement to waive a specific statutory remedy afforded him by a civil rights statute." (*Nelson, supra,* 119 F.3d at p. 762.) Further, Nelson did not specifically agree to be bound by the provisions of the handbook: he signed only an acknowledgement that he had received the handbook and agreed to read and understand it. (*Id.* at p. 761.)

Here, the offer letter expressly conditioned respondent's employment on agreeing to an arbitration process, as set forth in the accompanying arbitration document. Respondent accepted that conditional offer. The arbitration document described the disputes subject to arbitration and explicitly advised respondent that she was waiving her right to bring claims in a court of law and her right to a jury. The document stated that by signing the agreement, the employee agreed to its terms; respondent signed the agreement. She had nothing in common with the employee in *Nelson*.

Respondent next contends that her signature on the second untitled page of the arbitration agreement "did not constitute a '*knowing waiver*' of a statutory remedy provided by a civil rights law." By this, respondent appears to mean that there is no proof she saw or read the first page of the arbitration agreement, which contains the express waiver provisions. Respondent did not make this claim in the trial court; that is, she did not contend that she only received and read the signature page of the arbitration agreement. She has forfeited this contention.

12

B.     *The Signature of Altamed's CEO Was Not Required on the Arbitration Agreement.*

Respondent contends, in effect, that the trial court's implied ruling that there was no valid agreement should be affirmed because the agreement was a modification of the offer letter.  In finding that no signature was required on the arbitration agreement, the trial court rejected this claim.  Respondent's argument that a signature was required was based in part on her claim that the offer letter was an integrated agreement which required all modifications to be signed by the CEO and the arbitration document was itself a modification of the letter offer.[5]  We reject this claim as well.

Preliminarily we note we do not agree with respondent that the doctrine of implied findings applies here.  If a trial court's decision depends on disputed facts or extrinsic evidence, the doctrine of implied findings applies.  If "the facts bearing on the trial court's decision derive solely from the language of plaintiff's complaint and from the terms of the [arbitration agreement], [and] neither [are] in dispute," the "doctrine of implied factual findings does into come into play."  (*Molecular Analytical Systems v. Ciphergen Biosystems, Inc., supra,* 186 Cal.App.4th at p. 708.)  In such instances we independently review the questions of law raised by the decision.

Here there were no facts in dispute.  The trial court based its decision on the language of the arbitration agreement and the offer letter.  We independently review the issue.

---

[5]     Respondent had clearly claimed in her opposition to the motion to compel that the CEO's signature was required for the arbitration agreement to be valid.

13

" 'The rules governing the role of the court in interpreting a written instrument are well established. The interpretation of a contract is a judicial function. [Citation.] In engaging in this function, the trial court "give[s] effect to the mutual intention of the parties as it existed" at the time the contract was executed. [Citation.] Ordinarily, the objective intent of the contracting parties is a legal question determined solely by reference to the contract's terms. [Citations.]' [Citation.]" (*Brown v. Goldstein* (2019) 34 Cal.App.5th 418, 432.) Where, as here, no extrinsic evidence was introduced, we independently construe the contract. (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955.) Here, the offer letter does contain language which can reasonably be understood as an integration clause: "This letter constitutes the full terms of our employment offer and supersedes any prior or contemporaneous offers, understandings, communications, offers, representations, warranties or commitments, oral or written, by or on behalf of [appellants]." This language is slightly broader than the statutory provision concerning the effect of integration, which states: "Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to the terms included therein may not be contradicted by evidence of a prior agreement or of a contemporaneous oral agreement." (Code Civ. Proc., § 1856, subd. (a).)

The offer letter states that "to avoid costly and time consuming litigation, we have adopted an arbitration process that applies as a condition of employment. Please review and then sign the enclosed Arbitration Agreement and return with your signed offer." We construe this language as manifesting an

14

intent on the part of the parties to treat the arbitration agreement as part of (or one of the terms of) the employment offer, not a separate and contemporaneous agreement. A contrary interpretation would result in absurdity. If the arbitration agreement were a separate contemporaneous agreement, the letter would be directing respondent to sign an agreement which would be superseded by the very letter directing her to sign that agreement.[6]

Although respondent did not offer any extrinsic evidence concerning the meaning of terms in the letter offer, she did declare that she did not remember receiving the arbitration agreement at the time she received the offer letter. Whether or not she received the arbitration agreement with the offer letter, the record contains a signed copy of the arbitration agreement dated more than a week after respondent accepted Altamed's employment offer. Assuming for the sake of argument that this late signature on the arbitration agreement transformed it into a separate agreement, section 1856 would not bar evidence of this later agreement, and the letter's integration clause would not supersede it.

---

[6] We do not understand Code of Civil Procedure section 1856 as independently barring evidence of the arbitration agreement. It applies only to oral contemporaneous agreements which contradict the terms of the integrated agreement. The offer letter states that the arbitration process is a condition of employment. Evidence that respondent entered into a contemporaneous written arbitration agreement does not contradict that term.

15

Building on the (mistaken) premise the arbitration agreement is a separate agreement entered into after acceptance of the offer letter, respondent argues the arbitration agreement was a modification to the offer letter and so was required to be signed by Altamed's CEO. She bases this claim on language in the acknowledgement section of the letter, which states: "By accepting this offer of employment, I acknowledge that this in no way constitutes an employment contract between Altamed Health Services Corporation and myself. Furthermore, I acknowledge that my employment with Altamed Health Services Corporation is, except where prohibited by law, at will and may be terminated at any time, with or without prior notice and with or without cause, at the option of either myself or Altamed Health Services Corporation, and that no promises or representations contrary to the foregoing are binding on Altamed Health Services Corporation unless made in writing and signed by the Chief Executive Officer."

This language cannot be understood as requiring, as respondent claims, an intent by the parties that "any agreement that in any way modified the terms of the offer letter or her employment with Altamed Health Services Corporation needed to be signed by the CEO." The phrase "no promises or representations contrary to the foregoing" is in the same sentence as and immediately follows respondent's acknowledgement of her at will employment status. In this context, the phrase can only reasonably be understood as applying to respondent's at will employment status only. Thus, as we see it, only promises or

16

representations that respondent is not an at will employee require a writing signed by the CEO.[7]

II. ***Any Unconscionability in the Arbitration Agreement Does Not Provide Grounds for Revocation or Non-Enforcement.***

The trial court found "both procedural and substantive unconscionability here. Plaintiff's entire employment process appears to have been conducted in English, and her job appears to be at least primarily in English. While plaintiff has not established that a copy of the agreement in Spanish was required, there is some procedural unconscionability here."

Altamed contends the trial court erred in finding procedural unconscionability based on the lack of a Spanish translation. Respondent defends the court's ruling and also contends there was procedural unconscionability apart from the lack of a Spanish translation. She contends Altamed failed to provide her with a copy of the arbitration rules and created a lengthy and complex agreement. She also contends her contracts were ones of adhesion.

The court also found substantive unconscionability based on a provision of the arbitration agreement providing for review of the arbitration order by a second arbitrator. Altamed contends the trial court erred in finding a mutually enforceable provision

---

[7] We recognize the arbitration agreement is actually entitled "Employment At-Will and Arbitration Agreement California" and begins with a paragraph discussing respondent's at will status. The paragraph reaffirms respondent's at will status and so is not contrary to the provisions of the offer letter identifying her as an at will employee. It does not require a CEO signature.

17

substantively unconscionable and in failing to consider whether the provision was severable.

A.    *General Law of Unconscionability*

If a court finds as a matter of law that a contract or any clause of a contract is unconscionable, the court may refuse to enforce the contract or clause, or it may limit the application of any unconscionable clause so as to avoid any unconscionable result. (Civ. Code, § 1670.5, subd. (a).) "An agreement to arbitrate, like any other contract, is subject to revocation if the agreement is unconscionable. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 98.)" (*Carmona v. Lincoln Millenium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 83.)

"The general principles of unconscionability are well established. A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party. [Citation.] Under this standard, the unconscionability doctrine ' " has both a procedural and a substantive element. " ' [Citation.] 'The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. [Citations.] Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.' [Citation.] [¶] Both procedural and substantive unconscionability must be shown for the defense to be established, but 'they need not be present in the same degree.' [Citation.] Instead, they are evaluated on ' "sliding scale." ' [Citation.] '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is

required to' conclude that the term is unenforceable. [Citation.] Conversely, the more deceptive or coercive the bargaining tactics employed, the less substantive unfairness is required. [Citations.] A contract's substantive fairness 'must be considered in light of any procedural unconscionability' in its making. [Citation.] 'The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement.' " (*OTO, supra*, 8 Cal.5th 111, 125–126.)

"The burden of proving unconscionability rests upon the party asserting it. [Citations.] ' "Where, as here, the evidence is not in conflict, we review the trial court's denial of arbitration de novo.' " (*OTO, supra*, 8 Cal.5th at p. 126.)

B.     *There Is Limited Procedural Unconscionability.*

"The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." (*OTO, supra*, 8 Cal.5th at p. 125.)

Altamed contends the trial court erred in finding that the lack of a Spanish translation resulted in procedural inequality. We agree.

1.     There Was No Surprise.

The trial court found respondent had not established that a Spanish translation was required, but the court nevertheless found procedural unconscionability in Altamed's failure to provide such a translation. Just as a matter of logic, a party cannot surprise another party and obtain unreasonably favorable terms in a contract simply by failing to provide the other party with a translation of the contract which the other party does not

19

require.  (See *OTO, supra,* 8 Cal.5th at pp. 125–126 [procedural unconscionability addresses the circumstances of contract negotiation and formation and asks if there was oppression or surprise due to unequal bargaining power].)

Cases which find procedural unconscionability based on a lack of English skills involve a very low level of such skills.  In the two cases cited by respondent on this issue, for example, the employees spoke little or no English and were given only minutes to read and sign the English language employment documents containing the arbitration provisions.  (*Subcontracting Concepts (CT), LLC v. De Melo* (2019) 34 Cal.App.5th 201, 206 [employee was "not fluent enough in English to fully understand documents written in English" and was told "he had to sign employment documents 'on the spot' too get a job"]; *Carmona v. Lincoln Millennium Car Wash, Inc., supra,* 226 Cal.App.4th  at pp. 80–81 [one employee "could not speak or read English when he started working" for the defendant; the other employee "can read very little Spanish and cannot read English at all"].)

 Respondent's own declaration describes a much higher level of English fluency.  "During the interview, I confirmed that I was comfortable speaking and reading English, but for difficult legal terms and concepts, Spanish was preferred."  Simply preferring to read a document in Spanish does not demonstrate that the reader was unable to understand the document in English.  As did the trial court, we find, on this record, no translation was required.  The absence of a translation, then, does not contribute to the agreement's procedural unconscionability.

Respondent also contends Altamed's failure to provide her with a copy of the rules for arbitration created significant

20

surprise and procedural unconscionability. The law requires more than the simple failure to provide the employee with a copy of the rules.

As our Supreme Court has explained, in cases which find procedural unconscionability based on the failure of the employer to provide a copy of arbitration rules, "plaintiff's unconscionability claim depended in some manner on the arbitration rules in question. [Citations.] These cases thus stand for the proposition that courts will more closely scrutinize the substantive unconscionability of terms that were 'artfully hidden' by the simple expedient of incorporating them by reference rather than including them in or attaching them to the arbitration agreement. [Citation.] [Plaintiff's] argument accordingly might have force if her unconscionability challenge concerned some element of the AAA rules of which she had been unaware when she signed the arbitration agreement. But her challenge to the enforcement of the agreement has nothing to do with the AAA rules; her challenge concerns only matters that were clearly delineated in the agreement she signed. [Defendant's] failure to attach the AAA rules therefore does not affect our consideration of [plaintiff's] claims of substantive unconscionability." (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1246.)

Respondent contends that the arbitration agreement did not tell her how to initiate arbitration. As the reasoning of *Baltazar* indicates, the failure to provide a copy of the arbitration rules generally raises procedural unconscionability concerns only if there is a substantively unconscionable provision in the omitted rules. The agreement in this case states the procedures of the California Arbitration Act will apply. There are no substantively unconscionable rules in the Act.

2. By Virtue of the Employer-Employee Relationship Between the Parties, There Is Limited Procedural Unconscionability Due to Oppression.

Respondent contends the agreement was also procedurally unconscionable because it was a contract of adhesion and she had no meaningful opportunity to negotiate it. This claim involves the oppression aspect of procedural unconscionability.

"Arbitration contracts imposed as a condition of employment are typically adhesive [citations], and the agreement here is no exception. The pertinent question, then, is whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required." (*OTO, supra*, 8 Cal.5th 111, 126.)

" 'The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney.' " (*OTO, supra*, 8 Cal.5th at pp. 126-127.)

When arbitration is a condition of employment, there is inherently economic pressure on the employee to accept arbitration. This alone is a fairly low level of procedural unconscionability. (*Serafin v. Balco Properties Ltd, LLC* (2015) 235 Cal.App. 4th 165, 174–175 [procedural unconscionability limited where arbitration provisions were in a stand-alone two page document titled "MANDATORY ARBITRATION POLICY]"; see *Baltazar v. Forever 21, Inc., supra*, 62 Cal.4th at p. 1245

22

[procedural unconscionability limited where employee knew about arbitration provision in her employment agreement and was not manipulated into signing it].) Respondent does not identify any circumstances which created additional pressure.

In *OTO*, for example, the employer presented the employee with the arbitration agreement during the workday; the employee lost pay for the time he spent reviewing the agreement. The employee received the agreement in a workspace, and the employer representative waited for the agreement. This circumstance both created an expectation that the employee would sign immediately and made it extremely difficult for the employee to consult an attorney. The employee was not given a copy of the agreement. (*OTO, supra*, 8 Cal.5th 127–128.)

Here respondent was not yet employed by Altamed, and she declared that the letter and other documents were sent to her; the letter is addressed to respondent at what appears to be her residential address. The letter specified that respondent had a day to review the letter offer and accompanying arbitration agreement. In fact, respondent may have had longer than that, as her signature on the arbitration agreement is dated more than a week after the date of the letter. The agreement is not long, prolix, or complex. Since respondent had a physical copy of the agreement in her control for at least 24 hours, she had the ability to make a copy of that agreement if she wished. Although respondent offered evidence that English was not her first language, she did not offer any other evidence of her education or experience and did not state whether or not she consulted an attorney about the employment offer and its arbitration requirement. Thus, respondent has not shown any oppression

apart from that inherent in the adhesive nature of the agreement.

Respondent also addresses the physical aspects of the agreement as being oppressive. The *OTO* Court's discussion shows length and complexity can contribute to oppression when an employee is given only a very limited time to review the document. However, when time is not a significant factor, difficulty reading and/or comprehending an agreement due to its structure or use of legal terms is more properly analyzed as giving rise to surprise, not oppression. Because respondent had at least a day to review the agreement, we consider her claims concerning the physical aspects of the agreement and its structure and terminology in terms of surprise.

The Court in *OTO* found surprise where "[t]he agreement is a paragon of prolixity, only slightly more than a page long but written in an extremely small font. The single dense paragraph covering arbitration requires 51 lines. As the Court of Appeal noted, the text is 'visually impenetrable' and 'challenge[s] the limits of legibility.' " (*OTO*, *supra*, 8 Cal.5th at p. 128.) As we have explained, the agreement in this case was not long or physically difficult to read. It consisted of six paragraphs, the longest of which is 23 lines.

The Court in *OTO* also found surprise because the agreement contained complex sentences, statutory references and legal jargon. One sentence was 12 lines long. There are no such lengthy sentences in the agreement in this case. The agreement in this case does contain statutory references, those references are necessary to define the claims covered by arbitration; the references are explained in lay terms. For example, the agreement refers to "all disputes . . . including . . . any claims of

24

discrimination, harassment and/or retaliation whether they be based on the California Fair Employment and Housing Act, Title VII of the Civil Rights Act or other law. Similarly, the agreement uses a minimal amount of other legal terms and most are terms which are commonly understood, such as "trial by jury" and "immunity . . . from civil liability." The agreement uses clear language to describe the binding nature of the arbitration agreement, and the waiver of the right to bring claims in a court of law and to have a trial by jury.

### C.     *The Provision Giving Rise to Substantive Unconscionability Is Severable.*

The only element of substantive unconscionability claimed by respondent is the review by a second arbitrator (hereafter appellate arbitral review). Altamed contends the trial erred in finding the review was unconscionable and then failing to consider whether it was severable. We agree in part.

The court explained its finding of substantive unconscionability as follows: "An arbitration provision providing for unilaterally beneficial review by a second arbitrator fails to meet the requirement of allowing for a judicial review and constitutes an unconscionable provision. (See *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1073 (*Little*).) Although this provision permits either party to obtain review from a second arbitrator, it fails to address how this second review affects the time to appeal through the courts or to move to vacate the award in the court, or whether it was intended to replace a court review."

We understand the trial court's reference to *Little, supra,* 29 Cal.4th 1064 to be a statement that that even agreements which apply equally on their face to both parties may in practice

25

benefit only one of the parties.  As the *Little* Court stated concerning a facially bilateral clause permitting both parties to request trial de novo, " 'the benefit which the trial de novo clause confers on patients is nothing more than a chimera.' " (*Id*. at p. 1072, quoting *Saika v. Gold* (1996) 49 Cal.App.4th 1074, 1080 (*Saika*).)  "[T]he cases where the trial de novo clause could possibly benefit the patient are going to be rare indeed." (*Id*. at p. 1073.)

Here, respondent argued the appellate arbitral review provision benefits the employer in employee-employer arbitrations because the employer could unilaterally add costs and time to the arbitration proceeding by seeking this review and thereby maximize the employer's status as the better resourced party.  The trial court could reasonably have adopted this position.

Respondent contends the appellate arbitral review provision in this case is identical to the provision considered by the Court of Appeal in *Cummings v. Future Nissan* (2005) 128 Cal.App.4th 321 and held valid and enforceable.  The court in *Cummings*, however, held that the plaintiff had forfeited his claim that the review provision was unconscionable on its face by failing to raise it in opposition to the motion to compel arbitration.  (*Id*. at p. 329.)  In dicta in a footnote, the *Cummings* Court did suggest that a review provision with no dollar threshold would be enforceable, and that Court in *Little* had simply severed an offending dollar threshold and then permitted enforcement of the review provision.  (*Cummings, supra,* 128 Cal.App.4th at p. 329, fn. 9.)  We read *Little* as requiring severance of the entire review provision when it contains a dollar threshold.

26

When the Court in *Little* turned to severability, it considered the review provision as a whole and concluded: "There is only a single provision that is unconscionable, the one-sided arbitration appeal. And no contract reformation is required—the offending provision can be severed and the rest of the arbitration agreement left intact. Thus, the courts in *Beynon* [*v. Garden Grove Medical Group* (1980) 100 Cal.App.3d 698 (*Beynon*)] and *Saika*[*, supra*, 49 Cal.App.4th 1074], considering similar provisions, severed them and enforced the rest of the arbitration agreement. [Citations.]" (*Little, supra*, 29 Cal.4th at p. 1075.)

If the Court in *Little* had, as Altamed suggests, severed only the dollar amount from the appellate arbitral review provision, the Court would have done what it said was not required: it would have reformed the contract. The drafting party, the *Little* defendant, did not seek appellate arbitral review of all awards, only those over a certain dollar amount.[8] Thus, "severing" the dollar amount alone would have created a new provision in the arbitration agreement that *neither* party had sought or agreed to: appellate arbitral review of all awards. We understand the Court in *Little* as doing what it said and as the

_____

[8] The Court acknowledged that, from a defense standpoint, "an award in which there is less than that amount [of $50,000] in controversy would not be worth going through the extra step of appellate arbitral review." (*Little, supra*, 29 Cal.4th at p. 1073.) The Court's phrasing in discussing the procedural history of the case is also helpful here: "The Court of Appeal did not consider whether the arbitration 'appeal' *triggered by* an award of greater than $50,000 was unconscionable." (*Id.* at p. 1071, italics added.)

27

Courts of Appeal in *Beynon* and *Saika* did: severing the entire provision, not reforming the provision to make it bilateral.[9]

While the Court in *Little* focused on the unfair advantage provided to the defendant employer by the $50,000 threshold for appellate arbitral review, it was also concerned with the extra expense and delay associated with procedures which potentially stood between a plaintiff employee and the confirmation of his or her award. We share those concerns and cannot agree with the *Cummings* court's suggestion that an appellate arbitral review provision is always enforceable as long as it does not contain a dollar threshold.

The *Little* Court quoted the *Beynon* court's finding that a second arbitration "can render arbitration an expensive and protracted proceeding." (*Little, supra,* 29 Cal.4th at p. 1072.) Although not quoted by *Little*, the *Beynon* court continued: "a [patient] who has already incurred substantial expenses in the first arbitration proceeding, as has plaintiff, and who faces the prospect of having to pay one-half the cost of a second and

---

[9]  In *Beynon*, the court did not strike the portion of the arbitration agreement which limited the right to a second arbitration to the medical providers, thereby making the right to a second arbitration equally available to the patient and the medical provider, and then allow the case to proceed to a second arbitration. In *Saika*, the court did not sever the $25,000 dollar amount which gave rise to the right to request a trial de novo, thereby making the option of a trial de novo bilateral in practice, and then allowing a trial de novo. In both cases, the Courts of Appeal severed the entire provision and remanded the matter for the trial court to enter an order confirming the arbitration award. (*Beynon, supra,* 100 Cal.App.3d at pp. 713–714; *Saika, supra,* 49 Cal.App.4th at p. 1082.)

28

perhaps more costly proceeding before a panel of doctors might well be discouraged from further pursuit of the claim in the only forum available for the resolution of the dispute." (*Beynon, supra*, 100 Cal.App.3d at p. 706.)

The *Little* court also included the following quote from *Saika*: " 'Unless we are to assume that arbitrators in medical malpractice cases regularly and capriciously make awards substantially below what justice requires—and that is an assumption which we will not indulge—the cases where the trial de novo clause could possibly benefit the patient are going to be rare indeed.' " (*Little, supra*, 29 Cal.4th at pp. 1072-1073.) Although not quoted by the *Little* court, the court in *Saika* expressed concern with the additional expense and delay of a trial de novo for a plaintiff who had prevailed in the arbitration. (*Saika, supra*, 49 Cal.App.4th at p. 1079.)

Finally, the *Little* court itself stated: "[Defendant employer] also argues that an arbitration appeal is less objectionable than a second arbitration, as in *Beynon*, or a trial de novo, as in *Saika*, because it is not permitting a wholly new proceeding, making the first arbitration illusory, but only permitting limited appellate review of the arbitral award. We fail to perceive a significant difference. Each of these provisions is geared toward giving the arbitral defendant a substantial opportunity to overturn a sizable arbitration award. Indeed, in some respects appellate review is more favorable to the employer attempting to protect its interests. *It is unlikely that an arbitrator who merely acts in an appellate capacity will increase an award against the employer*, whereas a trial or arbitration de novo at least runs the risk that the employer would become liable for an even larger sum than that awarded in the initial

29

arbitration.  (*Little, supra*, 29 Cal.4th at pp. 1073−1074, italics added.)

The appellate arbitral review provision in this case brings together all the concerns alluded to and addressed in *Little*.  If an employee such as respondent receives an award that she believes is too low, "[i]t is unlikely that an arbitrator who merely acts in an appellate capacity will increase an award against the employer." (*Little, supra,* 29 Cal.4th at p. 1074.)  If the employee receives a substantial award, the employer can seek appellate arbitral review and thereby increase the expense and possibly the length of time required for the employee to obtain confirmation of her award, and do so with very little risk to itself.

Our use of the word "possibly" here highlights an additional problem with the appellate arbitral review provision, which the trial court recognized:  the provision provides no indication of how it is intended to be implemented or if it is an attempt to replace a court review.  If there are standard rules for appellate arbitral review, Altamed has not identified them.  Litigating these issues in the trial court as part of an attempt to confirm an award would certainly contribute to increased expense and delay in the confirmation.  Thus, the ambiguities created by the drafter, Altamed, have the potential to give it an even greater advantage than the mere provision for appellate arbitral review does.

Based on the record on appeal, this second review provision appears entirely severable from the remainder of the agreement and removing it would remove the only instance of substantive unconscionability.  The arbitration agreement contains a severability provision.  Accordingly, we order the provision severed.

## DISPOSITION

The trial court's order denying the motion to compel arbitration is reversed.  The second review provision of the arbitration agreement is ordered stricken.  The parties are ordered to arbitrate their dispute. No costs are awarded.


                                        STRATTON, J.

We concur:



        BIGELOW, P. J.



        GRIMES, J.

31